IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

JOSEPH A. ROMERO,

    Petitioner,

vs.                                                                                              Civ. No. 97-137 MV/LCS

**TIM LeMASTER, Warden,**

    Respondent.

## MAGISTRATE JUDGE'S PROPOSED FINDINGS
##    AND RECOMMENDED DISPOSITION

**THIS MATTER** comes before the Court on Joseph Romero's Petition for a writ of *habeas corpus,* filed on February 3, 1997, which was referred to this Magistrate Judge on March 3, 1997. Having considered the pleadings, the record and the briefs submitted by the parties, the Court proposes finding that four of Romero's seven claims are not-well taken and recommends that they be denied. The Court proposes finding that two of his claims are well-taken and recommends that they be granted. The Court finds that Petitioner is entitled to an evidentiary hearing on one of his claims.

      On Dec. 14, 1976, Romero was sentenced to 10-50 years imprisonment for trafficking in heroin, to run concurrently with a 1 to 5 year sentence for heroin posession. While in prison, inmates can earn good-time credits which reduce the length of their sentences. Misconduct can cause them to lose credits, although, if their conduct improves, they can request that their credits be restored. In Romero's case, over six years of his good-time credits were revoked because of his alleged misconduct on January 6, 1981, April 17, 1981 and April 19, 1981. He was paroled in

1

1983, but absconded from parole from 1983 to 1989, and was returned to prison in 1989. He was paroled again in 1992, but returned to prison in 1993, where he remains. In 1996, he requested that the good-time credits he forfeited in 1981 be restored, but the classification committee denied his request. Along with this request, Romero complained that since 1989, he had not been receiving all of the good time credit he should have. A staff member allegedly told him that he was receiving all the good time credit to which he was entitled.

Romero makes five separate claims that he was denied due process during the 1981 good-time revocation hearings. He also claims that he was denied due process when the classification committee denied his 1996 for restoration of the revoked credits. Finally, he claims that the classification committee has been violating the *ex post facto* clause in computing the good-time credits he has earned since 1989.

Respondent LeMaster contends that he is unable to respond to the substance of the five of good-time revocation claims because many of the records of those 1981 hearings were destroyed and the witnesses could not be expected to remember what transpired. LeMaster claims he has been prejudiced by Romero's waiting for over 15 years to bring this claim, and it should be dismissed pursuant to Habeas Corpus Rule 9(a). LeMaster also contends that Romero never raised these claims before the State Courts, and thus, they should be dismissed, on grounds of either procedural default or non-exhaustion.

Neither of LeMaster's defenses have merit. As to his Rule 9(a) argument, he may not rely on a presumption of a general loss of memory; rather, he must produce direct evidence that the witnesses have no recollection of the events. *See Walters v Scott*, 21 F.3d 683, 687-89 (5th Cir. 1994). Furthermore, he must show when the records were destroyed, in order to establish that,

had Romero not unreasonably delayed in filing this petition, the records would still have been available. *Id.* As LeMaster has not produced any evidence as to these elements, he cannot establish this defense. In addition, as to his non-exhaustion / procedural default defense, the Court has previously held that Romero's due process claims have been adequately exhausted. See Magistrate Judge's Proposed Findings and Recommended Disposition, filed on December 3, 1997.

Since no viable procedural defense has been raised, since LeMaster does not offer any evidence which raises a genuine issue as to Romero's factual allegations in the five revocation claims, and since Romero's factual allegations are supported by citations to the record, the only question before the Court on these claims is whether Romero's allegations state claims for which the relief sought can be granted. Accordingly, the Court reviews his allegations in order to determine whether the procedures he alleges were employed in his good-time revocation hearings violated due process requirements.

Recognizing that a prisoner in a disciplinary hearing is not entitled to the full panoply of due process protections applicable to defendant in a criminal proceeding, The United States Supreme Court held that due process in prisoner discipline hearings requires that the prisoner receive:

> (1) advance written notice of the disciplinary charges;
> (2) an opportunity, when consistent with institutional safety and goals, to call witnesses and present documentary evidence in his defense; and
> (3) a written statement by the factfinder of the evidence relied on and the reasons for the disciplinary action.

*Superintendent, Mass. Correctional Inst. V. Hill,* 472 U.S. 445, 454 (1985). In addition, due process requires that there be some evidence, however meager, to support the decision to revoke

good-time credits. *Id.* In the present case, Romero first contends that in the hearing on the April 17, 1981 incident, he was not allowed to call witnesses because he refused to waive his fifth amendment right to remain silent. The Court proposes finding that this conduct is inconsistent with the dictates of *Hill,* and recommends that Respondent be ordered to either hold a new disciplinary hearing on that incident or restore the good-time credits forfeited as a result of that incident.

Romero next contends that, as to the hearings on all three incidents, "[t]he department provided no justification for failing to accord Mr. Romero his right to confront the witnesses against him." brief in chief at 19. However, due process only gives the prisoner the right to call witnesses, not the right to confront adverse witnesses. *Taylor v. Wallace,* 931 F.2d 698, 701 (10th Cir. 1991). Accordingly, the Court proposes finding that this claim is not well-taken and recommends that it be denied.

Romero's third claim is that in all three hearings, the Disciplinary Committee's reliance on out-of-hearing statements made to the investigator violated due process. However, under *Hill,* due process requires only that there be some evidence, however meager, to support the revocation. While Romero cites *Taylor* for the proposition that a confidential informant's testimony in a good-time revocation hearing must have independent indicia of reliability, see brief in chief at 9, there is no indication that, in his case, confidential informants were used. Accordingly, the Court proposes finding that this claim is not-well taken and recommends that it be denied.

Romero's fourth claim is that, as to all three hearings, the Disciplinary Committe's written explanations for the revocations were too conclusory to satisfy due process. Under *Hill,*

4

due process requires that the factfinder make a written statement saying what evidence was relied upon and the reasons for the disciplinary action. The Disciplinary Committee stated that it relied on the misconduct reports, that it found Petitioner guilty of the charges and his conduct in each case was a major violation. The Court proposes finding that this is enough to satisfy the requirements of *Hill* and accordingly recommends that this claim be denied.

Romero's fifth claim is that he was denied due process because, under N.M. Stat.Ann. 32-3-36 (1978), the Disciplinary Committee's recommendations were supposed to be reviewed by the classification committee, the warden, and the penitentiary board, but that, in his case, they were not. The New Mexico Supreme Court held that the failure to follow this procedure was a denial of due process. *See Brooks v. Shanks,* 118 N.M. 716, 720-21, 885 P.2d 637, 641-42 (1994). This Court agrees, and recommends that LeMaster be ordered to either subject the Disciplinary Committee's findings and recommendations to review by the appropriate bodies or restore the forfeited good-time credits.

Romero's sixth claim is that his request for restoration of his good-time credits was denied summarily, based upon an irrational ground, which is a denial of due process. He contends that his request was denied on the grounds that his forfeitures had "vested". Romero points out that while there are provisions in the statutes for good-time credits to "vest" (become exempt from forfeiture), there is no provision whereby the forfeiture of those credits could become exempt from restoration. Accordingly, he contends the denial of his request on this ground was arbitrary and *ultra vires,* and thus, a violation of due process . *See Hicks v. Oklahoma*, 447 U.S. 343, 346 (1980).

Unlike the first five claims, LeMaster responds to the substance of this claim, pointing out

that the record actually states that "All good time earned prior to 7-29-93 became vested therefore it would be inappropriate to restore good time that was forfeited prior to his return from parole." The statute which provides for restoration of good-time credits, N.M.Stat.Ann. Sec. 33-2-37, states:

> Deductions forfeited under Section 33-2-36 NMSA 1978 may be restored in whole or in part to any prisoner who is exemplary in conduct and work performance for a period of not less than six months following the date of forfeiture, upon recommendation of the classification committee, approval by the warden and final approval by the secretary of corrections.

The legislature's use of the words *may, in whole or in part* and *not less than* in the statute suggests that the restoration of good-time credit is discretionary. Within such discretion, a policy of not restoring good time which was forfeited prior to an inmate's return from parole does not seem wholly irrational. Accordingly, the Court proposes finding that Committee's denial of Romero's restoration request was neither *ultra vires* nor arbitrary, and recommends that this claim be denied.

Romero's seventh and final claim is that since he returned to prison in 1989, he has not received all of the good-time credit to which he is entitled. Romero contends that the reason is that his good-time credits have been computed under a more recent law than the law applicable at the time he committed his offense. If his allegation is true, it states a violation of the *ex post facto* clause. LeMaster responded with an affidavit that the appropriate law was followed, and that the reason Romero has not received all of the good-time credit for which he was eligible was because of Romero's misconduct. To resolve this disputed issue of fact, an evidentiary hearing is necessary, and a separate Order will be entered setting that hearing.

In summary, the Court proposes finding that Romero's claim that he was denied the right to call witnesses on his behalf in the hearing on the April 17, 1981 incident is well-taken; and recommends that LeMaster be ordered to either conduct a new disciplinary hearing or to restore the good-time credits forfeited as a result of that incident. The Court proposes finding that as to all three hearings, LeMaster violated Romero's due process rights by not having the appropriate review of the disciplinary committee's findings and recommendations; and the Court recommends that LeMaster be ordered to either provide such review or to restore the good-time credits forfeited as a result of those findings and recommendations. The Court finds that an evidentiary hearing is necessary on the sole issue of which law has been applied in calculating Romero's good-time credits for the time he has served from 1989 to the present. The Court proposes finding that the rest of Romero's claims are not well-taken and recommends that they be denied.

Within ten days after a party is served with a copy of the Magistrate Judge's Proposed Findings and Recommended Disposition that party may, pursuant to 28 U.S.C. Sec. 636(b), file written objections to them. A party must file its objections within the ten-day period if that party wants to obtain appellate review of the Magistrate Judge's Proposed Findings and Recommended Disposition; in the absence of timely filed objections, neither the District Court nor the Court of appeals will review them.

_____
Leslie C. Smith
UNITED STATES MAGISTRATE JUDGE